IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

SONYA VONCILLE BYRD,       *
                          *
    Plaintiff,           *
                          *
vs.                       *    CIVIL ACTION 08-00584-KD-B
                          *
MICHAEL J. ASTRUE,         *
Commissioner of            *
Social Security,           *
                          *
    Defendant.           *

**REPORT AND RECOMMENDATION**

Plaintiff Sonya Voncille Byrd ("Plaintiff") brings this action
seeking judicial review of a final decision of the Commissioner of
Social Security denying her claim for period of disability,
disability insurance benefits and supplemental security income
under Titles II and XVI of the Social Security Act, 42 U.S.C. §§
401 et seq., and 1381 et seq. Oral argument was waived. Upon
careful consideration of the administrative record and the
memoranda of the parties, it is **RECOMMENDED** that the decision of
the Commissioner be **REVERSED and REMANDED.**

**I.  Procedural History**

Plaintiff protectively filed applications for disability
income benefits and supplemental security income benefits on
October 21, 2005. Plaintiff alleges that she has been disabled
since July 7, 2004, due to depression and problems with her knees.
(Tr. 45-47, 71-72, 393-396). Plaintiff's applications were denied
initially and she timely filed a Request for Hearing. (Tr. 34A,

42, 388-392).  On June 14, 2007, Administrative Law Judge James D.

Smith ("ALJ Smith") held an administrative hearing, which was

attended by Plaintiff and her representative.  (Tr. 410-427).  On

October 26, 2007, ALJ Smith issued an unfavorable decision finding

that Plaintiff is not disabled.  (Tr. 15-29).  Plaintiff's request

for review was denied by the Appeals Council ("AC") on September

10, 2008.  (Tr. 5-8).  As a result, the ALJ's decision became the

final decision of the Commissioner in accordance with 20 C.F.R. §

404.981.  (Id.)  The parties agree that this case is now ripe for

judicial review and is properly before this Court pursuant to 42

U.S.C. §§ 405(g) and 1383(c)(3).

## II.  Issue on Appeal

> Whether the ALJ erred in relying on the Medical-
> Vocational Guidelines as a framework for his decision, in
> light of Plaintiff's non-exertional impairments of major
> depressive disorder and personality disorder.

## III. Analysis

### A.   Standard of Review

In reviewing claims brought under the Act, this Court's role

is a limited one.  The Court's review is limited to determining 1)

whether the decision of the Secretary is supported by substantial

evidence and 2) whether the correct legal standards were applied.

Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).[1]  A court

---

[1]This Court's review of the Commissioner's application of
legal principles is plenary.  Walker v. Bowen, 826 F.2d 996, 999
(11th Cir. 1987).

may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. <u>Sewell v. Bowen</u>, 792 F.2d 1065, 1067 (11th Cir. 1986). The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. <u>Brown v. Sullivan</u>, 921 F.2d 1233, 1235 (11th Cir. 1991); <u>Bloodsworth v. Heckler</u>, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion[]"). In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision. <u>Chester v. Bowen</u>, 792 F. 2d 129, 131 (11th Cir. 1986); <u>Short v. Apfel</u>, 1999 U.S. DIST. LEXIS 10163 (S.D. Ala. June 14, 1999).

**B. <u>Discussion</u>**

An individual who applies for Social Security disability benefits must prove her disability. 20 C.F.R. §§ 404.1512, 416.912. Disability is defined as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 404.1505(a), 416.905(a). The Social Security

regulations provide a five-step sequential evaluation process for determining if a claimant has proven her disability.  20 C.F.R. §§ 404.1520, 416.920.[2]

Plaintiff was born on February 17, 1966 and was 40 years old at the time of the June 14, 2007 administrative hearing. (Tr. 45, 393, 413).  Plaintiff testified that she was in special education classes and that she finished the ninth grade in school. (Tr. 425). According to Plaintiff, she has problems reading, and had to take the written driver's test twice and the permit test four times.

---

[2]The claimant must first prove that he or she has not engaged in substantial gainful activity.  The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience.  If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work.  Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986).  In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; (4) the claimant's age, education and work history.  Id. at 1005.  Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history. Sryock v. Heckler, 764 F.2d 834 (11th Cir. 1985).  If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled.  Jones v. Apfel, 190 F.3d 1224, 1228 (11th  Cir. 1999).  See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

(Tr. 425-426). Plaintiff has past relevant work ("PRW") as a food service worker, grocery store cashier and cook. (Tr. 72, 78, 119, 415). According to Plaintiff, she has problems with both knees, one because she had surgery to remove a spur, and the other one due to inflammation. (Tr. 418). Plaintiff also testified that she is being treated at Mobile Mental Health ("MMH") for depression. Plaintiff testified that she sees a therapist at MMH once a month, that she is prescribed various medications for her depression, that she has problems sleeping and migraine headaches, and that she was hospitalized at Bay Point in November 2006 due to problems with depression. (Tr. 420-421). Plaintiff reported that she lives with her mom and two minor children, that she takes care of her children, that she performs some household chores, and that she shops along with her mom. (Tr. 97, 414, 424).

The ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2008, and that she has not engaged in substantial gainful activity since her amended alleged onset date. The ALJ concluded that while Plaintiff has the severe impairments of bilateral sacroiliac syndrome, osteoarthritis, degenerative disc disease, obesity, major depressive disorder and personality disorder, they do not meet or medically equal the criteria for any of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, Regulations No. 4. (Tr. 20). The ALJ found that Plaintiff has the residual functional capacity

for light exertional activity at the unskilled level involving work with objects rather than people. (Tr. 28). According to the ALJ, Plaintiff is moderately limited in social functioning and such limitation "further limits the claimant's occupational base to work involving only working with objects rather than people." The ALJ also concluded that because Plaintiff's past relevant work as a cook, cashier and buffet worker required light to medium exertional work activity and working with others, Plaintiff is unable to perform her past relevant work. (Id.) The ALJ further concluded that the restriction on Plaintiff's social functioning has "little or no effect on the occupational base of unskilled light work." (Id.) Utilizing the Medical-Vocational Guidelines, the ALJ concluded that considering Plaintiff's age, education, work experience and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Id.)

The relevant evidence[3] of record reflects that Plaintiff began receiving treatment at Mobile Mental Health ("MMH") in June 2005. (Tr. 360). Plaintiff was diagnosed with major depression, recurrent and without psychotic features, and PTSD. During her

---

[3]While the undersigned has examined all of the medical evidence contained in the record, including that which was generated before Plaintiff's alleged onset date, as well as that which was generated after the date she was last insured, only that evidence which is relevant to the issues before the Court is included in the summary.

initial assessment, Plaintiff's problems were described as depressed mood, crying spells, withdrawal, lack of outside interests, suicidal thoughts, nightmares and flashbacks, poor sleep and appetite, and poor concentration. (Tr. 369). The MMH records reflect that Plaintiff was prescribed various medication including Prozac[4], Zoloft[5], and Trazodone[6]. The MMH records also reflect that during her visits, Plaintiff was appropriately groomed, she sometimes had a sad affect, she reported fair to poor sleep and appetite, she sometimes reported suicidal thoughts but no plans, her memory and thoughts were generally within normal limits and more times than not, her concentration was unimpaired. In September 2006, Plaintiff was hospitalized for two days at Bay Pointe after reporting that she had been unable to leave her room, that she felt helpless and that she had purchased razors. (Tr. 342). Later, Plaintiff reported mood swings in which she went from having lots of energy which enabled her to clean her whole house and go to the gym to days where she felt withdrawn and irritable, and could barely get out of bed. (Tr. 339-341).

---

[4]Prozac is an antidepressant, used to treat depression, panic, anxiety, or obsessive-compulsive symptoms. See, www.drugs.com. (Last visited August 17, 2009.)

[5]Zoloft is an antidepressant, used to treat depression, panic, anxiety, or obsessive-compulsive symptoms. See, www.drugs.com. (Last visited August 17, 2009.)

[6]Trazodone is an antidepressant, used to treat anxiety and depression disorders, and chronic pain. See, www.drugs.com. (Last visited August 17, 2009.)

On February 23, 2006, Plaintiff underwent a Psychological Evaluation by Thomas S Bennett, Ph.D. at the request of the Agency. Upon mental exam, Dr. Bennett observed that Plaintiff was neatly dressed and groomed, her speech was normal, her mood was dysphoric, her affect was normal, and she was alert and oriented in all spheres. He opined that her short-term and long-term memory appeared to be average, and her concentration and attention, financial judgment, fund of information and abstract reasoning skills appeared to be below average but not impaired. He estimated that Plaintiff functions in the below average range of intelligence. (Tr. 228-231).

Dr. Bennett diagnosed Plaintiff with major depressive disorder, with possible history of learning disorders, and personality disorder, with avoidant and dependent features. He assigned her a GAF of 58[7]. Dr. Bennett observed that Plaintiff showed signs of significant depression and that she was not responding very well to treatment. He opined that Plaintiff's ability to relate to others and to respond appropriately to supervisors and peers is mildly impaired, and her ability to function independently is "probably" average. (Tr. 230-231).

_____

[7]The Global Assessment of Functioning Scale ("GAF") is a 100-point scale that measures a patient's overall level of psychological, social, and occupational functioning on a hypothetical continuum. A GAF of 51-60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. See, www.psyweb.com. (Last visited August 4, 2009).

In a Psychiatric Review Technique completed on March 7, 2006, William H. Simpson, PH.D., observed that Plaintiff has been diagnosed with major depressive disorder and personality disorder with avoidant and dependent features. He opined that Plaintiff is mildly restricted in her activities and in her ability to maintain social functioning, and is moderately restricted in her ability to maintain concentration, persistence or pace. (Tr. 232-245). In a Mental Residual Functional Capacity Assessment completed the same day, Dr. Simpson opined that Plaintiff is moderately limited in her ability to understand and remember detailed instructions, to carry out detailed instructions, to maintain attention and concentration for extended periods, and to interact appropriately with the general public. He concluded that Plaintiff is able to understand, remember and to carry out short and simple instructions, and is able to concentrate and attend for reasonable periods of time. He opined that contact with the general public should not be a usual job duty. (Tr. 246-249).

On June 14, 2007, Dr. Saitz, with MMH, completed a Mental Residual Functional Capacity Questionnaire, in which she opined that Plaintiff is markedly restricted in her activities of daily living, in that she is withdrawn and stays in bed; that she has marked difficulty maintaining social functioning, in that she panics around people; that she often has deficiencies in concentration, persistence or pace resulting in failure to complete

tasks in a timely and appropriate manner; and that she can be expected to have four or more episodes of decomposition in work or work-like settings which will cause her to withdraw from that situation or to experience exacerbation of signs and symptoms for a period lasting at least two weeks. Dr. Saitz also opined that Plaintiff had marked limitations in her ability to respond appropriately to co-workers and to customary work pressure, to perform simple or repetitive tasks, and to complete work-related activities in a normal workday or workweek. According to Dr. Saitz, these limitations have lasted, or can be expected to last, for 12 months or longer. Dr. Saitz also observed that Plaintiff had not worked in three years and had never been able to maintain employment for a full year. She further opined that Plaintiff suffers some cognitive impairment as a side effect of her medication. (Tr. 381-382).

1. **Whether the ALJ erred in relying on the Medical-Vocational Guidelines as a framework for his decision, in light of Plaintiff's non-exertional impairments of major depressive disorder and personality disorder.**

Plaintiff raises a single issue in her appeal. Plaintiff contends that at the fifth step of the sequential evaluation process, the ALJ improperly relied on the Medical Vocational Guidelines ("grids") to conclude that she is not disabled, when he should have instead obtained the testimony of a vocational expert. According to Plaintiff, the ALJ determined that she has the severe

impairments of major depressive disorder and personality disorder, and that these impairments result in a nonexertional limitation which precludes Plaintiff from working with people and restricts her to working with objects. Plaintiff asserts that this nonexertional limitation made the use of the grids inappropriate, and instead required the assistance of a vocational expert in order to determine the number of jobs Plaintiff could perform in light of her nonexertional limitation.

Defendant argues that exclusive reliance on the grids is only inappropriate if the claimant is unable to perform a full range of employment at a given exertional level, or if the claimant has a non-exertional impairment that significantly limit her basic work skills. According to Defendant, in this case, a vocational expert was not required because Plaintiff does not have any exertional limitations that restrict her performance of a full range of employment at a given exertional level, nor does her nonexertional limitation, i.e. working only with objects rather than people, have any effect on the occupational base of unskilled light work.

As noted supra, at the fifth step of the sequential evaluation process, the burden shifts to the Commissioner to show that there are a significant number of jobs in the national economy that the claimant can perform. See, e.g., Phillips v. Barnhart, 357 F.3d 1232, 1239-1240 (11th Cir. 2004). In so doing, the ALJ must determine the claimant's RFC (i.e., what the claimant is still able

to do despite her impairments), and this determination is based on all relevant medical and other evidence.[8] Id. "The general rule is that after determining the claimant's RFC, and ability or inability to return to past relevant work, the ALJ may use the grids to determine whether other jobs exist in the national economy that a claimant is able to perform. However, "exclusive reliance on the grids is not appropriate either when [the] claimant is unable to perform a full range of work at a given residual functional level or when a claimant has non-exertional impairments that significantly limit basic work skills."' Phillips, 357 F.3d at 1242 (quoting Francis v. Heckler, 749 F. 2d 1562, 1566 (11th Cir. 1985)).

In using the Grids, the ALJ inputs the claimant's physical exertion level, skill level, age, education, and experience into a formula, which establishes whether the claimant is disabled. Phillips, 357 F.3d at 1240. Stated more specifically, where non-exertional impairments do not significantly erode the occupational base, the ALJ may use the Grids. See, e.g., Syrock v. Heckler, 764

_____

[8]A claimant's RFC can contain both exertional and nonexertional limitations. Id. at 1242-1243. Exertional limitations affect an individual's ability to meet the seven strength demands of the job: sitting, standing, walking, lifting, carrying, pushing and pulling. See Social Security Ruling 96-4, 61 Fed. Reg. 34488 (July 2, 1996). Nonexertional limitations or restrictions affect an individual's ability to meet the other demands of jobs and include mental impairments, pain limitations, and all physical limitations that are not included in the seven strength demands. Id.; Phillips, 357 F.3d at 1242, n. 11.

F.2d 834, 836 (11th Cir. 1985).  The grids fulfill the burden of proving the existence of jobs in the national economy that a claimant could perform, given her age, education, vocational profile and RFC, and use of the grids is a valid exercise of the Commissioner's authority.  Id.  See also, e.g., Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L. Ed. 2d 66 (1983). Moreover, the Eleventh Circuit has made clear that "[e]xclusive reliance on the grids is not appropriate either when the claimant is unable to perform a full range of work at a given residual functional level or when a claimant has non-exertional impairments that significantly limit basic work skills." Phillips, 357 F.2d at 1242 (quotation omitted).[9]  In such cases, the preferred method of demonstrating that the claimant can perform other jobs is through the testimony of a vocational expert. Perry v. Astrue, 280 Fed. Appx. 887, 2008 U.S. App. LEXIS 12285 (llth Cir. June 4, 2008); Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); See, e.g., Gray v. Massanari, 2001 WL 530704, *2 (S.D. Ala. May 1, 2001); Cowart v. Schweiker, 662 F.2d 731, 736 (11th Cir. 1981); Chester v. Bowen, 792 F.2d at 131-132 (11th Cir. 1986).[10]

---

[9]The Eleventh Circuit has interpreted "significantly limits basic work skills" to mean limitations that prohibit a claimant from performing "a wide range of work at a given work level." Phillips, 357 F.3d at 1243.

[10]See also MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986) (stating that when non-exertional factors, such as pain or the effects of medications, are alleged, "the preferred method of demonstrating that the claimant can perform specific jobs is

In D'Anna v. Commissioner of Social Security, 2009 U.S. Dist. LEXIS 121243 (M.D. Fla. Dec. 29, 2009), the plaintiff argued that the ALJ erred in relying exclusively on the grids where he found that the plaintiff was limited to simple, routine work consisting of no more than one, two or three step tasks, without close proximity to coworkers or the general public. In concluding that the plaintiff was not disabled, the ALJ cited Social Security Ruling 85-15[11], and found that the body of unskilled work, by its

through the testimony of a vocational expert[]"; Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990) (finding that if nonexertional impairments significantly limit basic work activities, then the Grids do not apply and VE testimony should be obtained).

[11]SSR 85-15, 1985 SSR LEXIS 20, states in pertinent part,

> Where a person's only impairment is mental, is not of listing severity, but does prevent the person from meeting the mental demands of past relevant work and prevents the transferability of acquired work skills, the final consideration is whether the person can be expected to perform unskilled work. The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base. This, in turn, would justify a finding of disability because even favorable age, education, or work experience will not offset such a severely limited occupational base.

.......................................................

very nature, would accommodate the plaintiff's non-exertional limitations because "unskilled" jobs ordinarily involve dealing primarily with objects, rather than with data or people, and generally provide substantial vocational opportunities.

Upon review, the court held that the ALJ's finding that the claimant's non-exertional limitation did not erode the vocational base was not supported by substantial evidence. According to the court, while it is true that unskilled jobs involve dealing primarily with objects and not people, the Ruling makes clear that these jobs provide substantial vocational opportunity for those persons who retain the capacity to meet the basic mental and emotional demands of such jobs on a sustained basis. The court held that where it was implicit in the ALJ's finding that the claimant had difficulty interacting with people, the ALJ was required to retain a vocational expert to offer an opinion about the vocational effect of the limitation. <u>See</u> <u>also</u> <u>England v. Astrue</u>, 2008 U.S. Dist. LEXIS 27531 (M.D. Fla. March 28,

_____

> Where there is no exertional impairment, unskilled jobs at all levels of exertion constitute the potential occupational base for persons who can meet the mental demands of unskilled work. These jobs ordinarily involve dealing primarily with objects, rather than with data or people, and they can generally provide substantial vocational opportunity for persons with solely mental impairments who retain the capacity to meet the intellectual and emotional demands of such jobs on a sustained basis.

SSR 85-15, 1985 SSR LEXIS 20.

2008)(where ALJ concluded that plaintiff could not have significant contact with other people or perform high stress work, court held that exclusive reliance on the grids was not proper. The Court noted that "the rule in this circuit appears to be that when the ALJ finds that nonexertional functional limitations exist, VE testimony is necessary to support an ALJs conclusion that those nonexertional impairments do not significantly limit basic work skills.")

In the case <u>sub judice</u>, the ALJ determined that Plaintiff's severe impairments include major depressive disorder and personality disorder, and that her RFC is limited to light work involving working with objects rather than people. (Tr. 21). Relying on Rule 202.17 of the Grids, the ALJ concluded that Plaintiff was not disabled, and stated as follows:

> If the claimant had the residual functional capacity to perform the full range of light work, considering the claimant's age, education, and work experience, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.17. However, the additional limitations have little or no effect on the occupational base of unskilled light work. A finding of "not disabled" is therefore appropriate under the framework of this rule. The claimant's moderate limitation in social functioning further limits the claimant's occupational base to work involving *only* working with objects rather than people.

(Tr. 28)(emphasis added).

The undersigned finds that the ALJ's finding, that Plaintiff's non-exertional limitation has "little or no effect" on her occupational base for unskilled light work is not supported by

substantial evidence. First of all, the ALJ did not offer a specific explanation for his finding that there was no erosion of the vocational basis. While the Commissioner suggests that there was no erosion of the occupational base because unskilled work entails working primarily with objects as opposed to people, he has not cited any Eleventh Circuit decisions which hold that vocational testimony is not needed where it is determined that the claimant is restricted to work involving *only* objects rather than people. Moreover, as noted by the Court in <u>D'Anna v. Commissioner of Social Security</u>, implicit in an ALJ's finding that a claimant should only work with objects and not people is an acknowledgment that the claimant has difficulties interacting with people. Clearly, it is conceivable that such a limitation could have more than a minimal effect on the vocational base of unskilled light work. This is particularly true in this case where the ALJ found that Plaintiff's severe impairments include major depressive disorder and personality disorder, and Dr. Bennett, the doctor whose opinions the ALJ assigned controlling weight[12], observed that

---

[12]The ALJ stated in his opinion that Dr. Saitz treated Plaintiff only two times, in March 2, 2006 and January 11, 2007, and that he gave more weight to the opinion of Dr. Bennett, who ". . . conducted a thorough and detailed evaluation . . .". The record reflects Dr. Saitz, Plaintiff's treating psychiatrist at MMH, referred Plaintiff to Ms. Schreiber, a licensed social worker at MMH, and that Ms. Schreiber conducted Plaintiff's therapy sessions on at least twelve occasions over the course of a two year period. (Tr.    ). Ms. Schreiber documented Plaintiff's sad and tearful mood, suicidal thoughts, impaired concentration, lack of energy and isolation. Additionally, in August 2006, MMH

Plaintiff showed signs of significant depression, that her activities were constricted, and that she was not responding well to mental health treatment. Moreover, the records reflect that months *after* Dr. Bennett's one-time evaluation, Plaintiff was hospitalized at Bay Pointe with suicidal ideations, and although her medications were adjusted, she continued to report significant depression, including dramatic mood swings. (Tr. 337-342)

Accordingly, based upon the totality of the record evidence, the undersigned finds that the ALJ erred in not obtaining the testimony of a vocational expert[13] in this instance. On remand, the Commissioner should obtain the opinion of a vocational expert to determine whether there has been an erosion of the occupational base, and whether there are jobs in significant numbers in the national economy that Plaintiff can perform given her functional limitations. See, e.g., Phillips, 357 F.3d at 1241-1242 (providing that exclusive reliance on the grids is inappropriate when claimant has non-exertional impairments that significantly limit basic work skills); MacGregor, 786 F.2d at 1054 (stating that when non-

_____

psychiatrist Dr. Billet noted Plaintiff's anxious appearance, increased intrusive thoughts of past trauma, frequent and intense nightmares, avoidant behavior, depression, anhedonia, hopelessness, and crying spells. He also noted that she was not very active or social. (Tr. 344-345).

[13]The record reflects that while the ALJ had a vocational expert present at the administrative hearing, he elected against posing any questions to the vocational expert at that point because he observed that it would be illegal to do so as additional medical records were needed, and it was not yet clear if another consultant examination was required. (Tr. 426).

exertional facts are alleged, "the preferred method of demonstrating that the claimant can perform specific jobs is through the testimony of a vocational expert[]"); <u>Swindle v. Sullivan</u>, 914 F.2d at 226 (holding that if non-exertional impairments significantly limit basic work activities, then the grids do not apply and VE testimony should be obtained).

**V.   <u>Conclusion</u>**

For the reasons set forth, and upon careful consideration of the administrative record, memoranda of the parties and oral argument, it is **RECOMMENDED** that the decision of the Commissioner of Social Security, denying Plaintiff's claim for disability insurance benefits and supplemental security income, be **REVERSED and REMANDED.** The attached sheet contains important information regarding objections to this <u>Report and Recommendation</u>.

**DONE** this **19th** day of **January, 2010.**


        /s/ SONJA F. BIVINS
        **UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
<u>AND FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>**

1.    **<u>Objection</u>**.  Any party who objects to this recommendation or anything in it must, within **fourteen** days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge. <u>See</u> 28 U.S.C. § 636(b)(1)(c); <u>Lewis v. Smith</u>, 855 F.2d 736, 738 (11th Cir. 1988).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides, in part, that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days[14] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.    **<u>Opposing party's response to the objection.</u>**  Any opposing party may submit a brief opposing the objection within fourteen days of being served with a copy of the statement of objection.

---

[14]The Court's Local rules are being amended to reflect the new computations of time as set out in the amendments to the Federal Rules of Practice and Procedure, effective December 1, 2009.

Fed. R. Civ. P. 72; SD ALA LR 72.4(b).

3.    **Transcript (applicable where proceedings tape recorded)**.
Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate
judge finds that the tapes and original records in this action are
adequate for purposes of review.  Any party planning to object to
this recommendation, but unable to pay the fee for a transcript, is
advised that a judicial determination that transcription is
necessary is required before the United States will pay the cost of
the transcript.

    **/s/ SONJA F. BIVINS**
    **UNITED STATES MAGISTRATE JUDGE**